[Civ. No. 3869. Third Appellate District.—December 2, 1929.]

JOSEPH SLATER, a Taxpayer, etc., Petitioner and Respondent, v. J. A. KESEY, as Assessor, etc., Respondent; LULU M. KEEBLE, Intervener and Appellant.

W. D. L. Held for Intervener and Appellant.

M. H. Iverson and Burt W. Busch for Petitioner and Respondent.

H. G. Crawford, District Attorney, for Respondent.

THOMPSON (R. L.), J.—This is an appeal from a writ of mandate which was issued to require the assessor of Lake County to include in the Upper Lake Union School District, for the purpose of raising elementary school taxes, the territory sought to have been withdrawn therefrom by the creation of a new elementary school district called the Lucerne School District, on the ground that the procedure of organizing this new district was illegal.

The essential facts were stipulated. The petitioner for the writ is a taxpayer in Upper Lake Union School District. This union school district was duly organized by including therein Hammond School District together with other contiguous districts. Lucerne District had no prior separate existence. The territory of which it is comprised was merely an undivided part of Hammond School District when the Union School District was organized. The intervener and other resident heads of families then sought to create a new elementary school district from a portion of the territory of Upper Lake Union School District, pursuant to the provisions of sections 1577 and 1578 of the Political Code. It is conceded that the provisions of these two sections were strictly complied with in the effort to form the new Lucerne District. These sections furnish a complete method of procedure for the formation of a new elementary school district, and do not specifically preclude the creation of such an elementary district from the territory included

in a duly organized union school district. ██ Section 1591a of the Political Code does, however, prescribe the only means by which an elementary district which is contained within the union district may withdraw therefrom It is the exclusive method of seceding from the union district. This last-mentioned section provides in part:

"Any school district contained in a union or joint union school district may . . . withdraw from such union or joint union district by action of the board . . . of supervisors . . . whenever a majority of the heads of families residing in the union or joint union district, including two-thirds of the heads of families who reside in the district wishing to withdraw . . . shall present to such board . . . a petition for such withdrawal, accompanied by a written consent to such withdrawal signed by a majority of the members composing the board of trustees of such union or joint union district. . . . "

It is not contended by the appellant that these provisions of the foregoing section with respect to withdrawing from a district were complied with. The appellant's attorney conceded this when he said: "We admit we didn't do anything necessary to be done if we have to withdraw and they admit we did everything necessary to be done if we don't have to withdraw."

██ The question is therefore squarely presented: May territory which has been regularly included within a duly organized union school district be exempted from taxes and other union school district obligations by subsequently creating and maintaining within the limits of said union district a separate and distinct elementary district, without first obtaining consent and withdrawing from the union district of which it is a component part, and without any pretense of severance?

██ These several sections respecting the organization, maintenance, severance and termination of school districts must be construed together and harmonized if possible. This leads to the conclusion that after an elementary school district becomes subject to a joint or union district by formally uniting therewith, except when it has been suspended under the provisions of section 1591b of the Political Code, it is imperative that such district or any portion of its territory seeking independence from the union district

shall first withdraw therefrom in the manner prescribed by section 1591a of the same code. Having voluntarily become a part of a duly organized union district, independence therefrom may be secured only by a formal severance. Participation in the benefits of a union district may not be repudiated without legal process and without consent of the representatives of the union district so abandoned.

 It is argued that even if this be true with respect to an entire former elementary district, it does not apply to a portion only of such district; that there is no provision of law applicable to the withdrawal of a portion only of a district.

It is true that section 1591a provides no specific means by which a part of a district may withdraw from a union district. The withdrawal of a portion of a district is not contemplated, unless the lesser portion thereof is included by inference in the procedure applicable to the entire district. This omission, however, is not fatal. An express declaration of terms upon which a district may sever its association with a union district will be deemed to be exclusive and to preclude any other method of withdrawal. In the case of *Washburn* v. *Mann*, 73 Cal. App. 302 [238 Pac. 721, 722], the court said: "This system is complete and must be held to be exclusive."

It may not be assumed that because the legislature failed to specifically provide the means of withdrawal with relation to a portion of a district that therefore an absolute right exists to withdraw in this segregated fashion. The omission to legislate in this regard enforces the conclusion that the legislature intended to permit a former district to withdraw from the union district only as an entire unit, or not at all.

This very question was determined with relation to the severance of territory from a high school district in the case of *Multer* v. *Keppel*, 76 Cal. App. 517 [245 Pac. 218], wherein it was said:

"It seems, therefore, that there is no method provided for withdrawal of a portion of the high school district from the district itself and the formation of a new high school district. . . . There is no presumption that of necessity there must be some method provided for such withdrawal."

■ It is true that section 1587 of the Political Code provides for the automatic dissolution of the several elementary districts after they have united and merged in a union district, except for certain purposes which are specifically reserved.

In this regard that section provides: "The districts uniting to form the union or joint union school district *shall cease to exist*, except for purposes specified in sections 1585 to 1591c, inclusive. . . . "

One of these purposes for which the original districts are preserved intact, as provided by section 1591a is the very proceeding which is here involved, namely, the withdrawal of a district from the union. It follows that the Hammond School District, of which the Lucerne territory was a part, was effectively dissolved at the organization of the union district, except for the purposes reserved by the statute. Certainly this automatic dissolution may not be overcome by reorganizing the former district in whole or in part. If the entire original district may not sever its relationship with the union district except by withdrawing in the manner provided by law, then a portion of that district can accomplish the same object only by conforming to the same procedure. Otherwise, a district could circumvent the law by withdrawing piecemeal from the union. At an election held pursuant to law, the Upper Lake Union School District was duly organized, and by consent the territory comprising the proposed new Lucerne District became a part of that union district subject to its management and liable for its obligations. This relationship may be terminated only in the manner provided by section 1591a.

■ Even though it be conceded that a new elementary school district may be organized under sections 1577 and 1578 from the territory included in a union school district which hypothesis this court is not deciding, yet after the completion of that organization its territory would still be a part of the union district, from which it would be required to disassociate in the manner provided by law. Regardless of whether a new elementary district may be formed from the territory of a union district, it must nevertheless withdraw from the union district and terminate its former association to escape the obligations incurred thereby. This was not done.

The writ was therefore properly issued and the judgment is affirmed.

Jamison, J., *pro tem.*, and Finch, P. J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on December 31, 1929, and a petition by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on January 30, 1930.

Preston, J., dissented.