**Ellis Dwight WILLIAMS, Appellant,**

v.

**Mason DAY et al., Appellees.**

**No. 76–1359.**

United States Court of Appeals, Eighth Circuit.

Submitted Jan. 11, 1977.

Decided April 21, 1977.

Robert M. Cearley, Jr., Little Rock, Ark., for appellant; Eugene R. Warren, Little Rock, Ark., on brief.

Donn Mixon, Jonesboro, Ark., for appellees; Bill Penix, Jonesboro, Ark., and J. W. Steinsiek, Blytheville, Ark., on brief.

G. Ross Smith, Little Rock, Ark., for amicus curiae, Ark. School Boards Ass'n.

Before GIBSON, Chief Judge, BRIGHT, Circuit Judge, and HANSON, Chief District Judge.*

HANSON, District Judge.

Appellant Ellis Dwight Williams commenced this civil rights action under 42 U.S.C. § 1983 (1970), seeking a declaratory judgment, injunctive relief, and damages based on the Blytheville, Arkansas School District's decision not to renew his employment as a non-tenured teacher and basketball coach for the 1973–1974 school term. Named as defendants in the lawsuit were the individual Blytheville School Board directors and the school district itself. The District Court, after a non-jury trial, entered an extensive memorandum opinion [1] which found no constitutional infirmities in the defendants' actions, and accordingly ordered the complaint dismissed. Before discussing the five grounds for reversal urged by the appellant, we will briefly review the facts.

Appellant is a teacher certified under Arkansas law, with over twenty-five years' experience. In May of 1972, he entered into an employment contract with the Blytheville School District for the 1972–1973 school year. This was to be appellant's tenth year as a teacher and high school basketball coach for the District; he was non-tenured. General supervision of the athletic program at Blytheville High School was the dual responsibility of the school's athletic director and principal. Appellant, as basketball coach, and Larry Wright, as football coach, were to conduct themselves pursuant to the policies and directives of their superiors. As the record amply reflects, the athletic program at Blytheville High School did not function smoothly during the 1972–1973 school term. Appellant and coach Wright were frequently at odds over the use of the school's somewhat limited physical facilities. Further, it appears that appellant found it difficult to operate within the chain of command established at the school. On at least two occasions he voiced complaints to outsiders about the internal operation of the school's athletic program—in both instances he was acting contrary to the orders of the Athletic Director and Principal.

On April 2, 1973, the School Board voted not to renew appellant's teaching contract for the upcoming term. In a letter to appellant dated April 3, 1973, Superintendent Harris enumerated these reasons for the Board's decision: (1) appellant's insubordination toward the administration; (2) the best interest of the overall athletic program; (3) appellant's best interests. Upon request of appellant's counsel, this list was amplified, and a hearing on the non-renewal of appellant's contract was held on May 2, 1973. The Board reaffirmed its decision after the hearing, and this litigation was commenced soon thereafter.

■ Appellant's major contentions on appeal are based on claims that the District Court erred in ruling that neither his First Amendment nor Fourteenth Amendment rights were transgressed by the appellees. One preliminary matter must be noted before discussing the merits of these constitutional claims, however. Appellant urges that the District Court, in ruling on the instant civil rights complaint, should have confined itself to a review of the evidence

---

* The Honorable William C. Hanson, Chief Judge, Southern District of Iowa, sitting by designation.

1. Judge G. Thomas Eisele's opinion is reported at 412 F.Supp. 336 (E.D.Ark.1976).

presented at the hearing before the School Board. In short, appellant asserts that because a prior hearing has been held under state law, the District Court's role in this § 1983 case should have been reduced to that of a court reviewing administrative action. *Cf.* 42 U.S.C. § 405(g). No support exists for so restricting a federal district court's function in a case such as this one. While appellant was free to make the tactical choice of presenting his case-in-chief, except for evidence as to damages, by way of the hearing transcript, this decision in no way barred the introduction of relevant evidence by the defendants. The District Court did not err in considering all the evidence in the record, *including* the hearing transcript, in reaching its decision.

Appellant next asserts that the District Court erred in rejecting his contention that the Board's decision to discontinue employment was in retaliation for his exercise of First Amendment rights. In this regard, appellant urges that the Board's decision transgressed his rights if First Amendment-protected activity was even "partially a factor" in his dismissal.

■ The District Court found that appellant's contract "was not renewed for the most mundane of personnel considerations. The decision was not in any way based upon [appellant's] exercise of his First Amendment rights." 412 F.Supp. 340. In addition, the District Court characterized appellant as a disgruntled employee, whose behavior during the 1972–1973 term was in large part affected by his dissatisfaction over not being appointed athletic director in 1971. The record provides no basis for disturbing these findings. Fed.R.Civ.P. 52.[2]

On December 13, 1972 appellant mailed a letter to the superintendent of schools complaining about the conditions under which he was forced to conduct basketball practice. This letter stated that if conditions

did not change, appellant was planning to convey his grievances directly to the players' parents. Copies of the letter were sent, by appellant, to all Board members. The core of appellant's First Amendment argument is that this letter, which was constitutionally protected speech, was the single most important factor motivating the Board's decision to discontinue his employment. As previously noted, the record fails to support this contention. Appellant nonetheless argues that even if the letter was not "the" cause of the Board members' action, their conduct violated the First Amendment if the letter was "only partially a factor" in the decision. *Gieringer v. Center Sch. Dist. No. 58,* 477 F.2d 1164, 1166 n.2 (8th Cir.), *cert. denied,* 414 U.S. 832, 94 S.Ct. 165, 38 L.Ed.2d 66 (1973).

*Gieringer* presented a situation where a teacher's constitutionally protected activity "served as a catalyst * * * without it no discharge would have occurred." *Id.* at 1166. Thus, that case is clearly distinguishable on its facts. Moreover, *Gieringer's* "partial factor" admonition is subject to evaluation in view of the Supreme Court's recent decision in *Mt. Healthy School District Board of Education v. Doyle,* 429 U.S. 274, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977).[3] In that case a teacher was reinstated, with back pay, upon the District Court's finding that a constitutionally protected telephone call played a "substantial part" in the school board's decision not to continue his employment. This determination was affirmed on appeal to the Sixth Circuit Court of Appeals. 529 F.2d 524 (6th Cir. 1975). The United States Supreme Court, expressing disagreement with the causation rationale of the lower courts, remanded the case for further proceedings.

Justice Rehnquist, writing for a unanimous court, took issue with the proposition that a constitutional violation occurs when-

2. Appellant, of course, bore the burden of showing that the Board's decision to discontinue his employment was in fact based upon its disapproval of his exercise of constitutionally protected rights. *Watts v. Board of Curators, Univ. of Missouri,* 495 F.2d 384, 389 (8th Cir. 1974).

3. *Mt. Healthy* was handed down on January 11, 1977, the day of oral argument in this cause. Thus, its applicability was not argued by either party.

ever a teacher's protected conduct plays a "substantial part" in a school board's non-renewal decision. In the words of the Court,

> [t]he difficulty with the rule enunciated by the District Court is that it would require reinstatement in cases where a dramatic and perhaps abrasive incident is inevitably on the minds of those responsible for the decision to rehire, and does indeed play a part in that decision—even if the same decision would have been reached had the incident not occurred. *The constitutional principle at stake is sufficiently vindicated if such an employee is placed in no worse a position than if he had not engaged in the conduct.* A borderline or marginal candidate should not have the employment question resolved against him because of constitutionally protected conduct. But that same candidate ought not to be able, by engaging in such conduct, to prevent his employer from assessing his performance record and reaching a decision not to rehire on the basis of that record, simply because the protected conduct makes the employer more certain of the correctness of its decision.

*Id.* 429 U.S. at 285, 97 S.Ct. at 575 (emphasis added).

The Court then adopted the following test to properly balance the competing interests at stake: a plaintiff must initially carry the burden of establishing that the conduct in question was both constitutionally protected and a motivating or substantial factor in the school board's decision; when this burden is established, the school board must then show, by a preponderance of the evidence, "that it would have reached the same decision * * * even in the absence of the protected conduct." *Id.* at 287, 97 S.Ct. at 576.

█ In this case, the District Court properly found that appellant's protected activity was "not the basis" of the Board's deci-

sion. 412 F.Supp. at 348. Thus, appellant's First Amendment argument fails even under *Gieringer*; when *Mt. Healthy* is applied, the weakness of the First Amendment claim is even more pronounced.

█ Appellant's remaining claims are based upon alleged due process deprivations. The first assertion is that the District Court erred in holding that appellant was not vested with a property right under pertinent Arkansas statutes. It is fundamental that state law must be consulted to determine whether a claimed property interest in employment is of sufficient stature to implicate the due process clause. *Bishop v. Wood,* 426 U.S. 341, 96 S.Ct. 2074, 48 L.Ed.2d 684 (1976); *Board of Regents v. Roth,* 408 U.S. 564, 577, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972). The District Court gave extensive consideration to appellant's claimed property interest; in essence, the court found the teacher-employment provisions of Arkansas law to be substantially similar to the North Dakota termination of employment statutes considered in *Buhr v. Buffalo Public Sch. Dist. No. 38,* 509 F.2d 1196 (8th Cir. 1974). The District Court's analysis correctly stated the law; the pertinent Arkansas statutes,[4] which do not provide for the tenure, create "no property interest or claim of entitlement to renewal of a contract." 412 F.Supp. at 344.

█ Appellant's final contention is that his hearing before the Board was defective in that he was not afforded an impartial tribunal. Even if we assume that such a hearing was mandated by the due process clause, the claim of partiality lacks substance. As the United States Supreme Court noted in *Hortonville Joint Sch. Dist. No. 1 v. Hortonville Education Ass'n,* 426 U.S. 482, 493, 96 S.Ct. 2308, 2314, 49 L.Ed.2d 1 (1976):

> Mere familiarity with the facts of a case gained by an agency in the performance of its statutory role does not, however, disqualify a decisionmaker * * *

---

**4.** The statutes construed by the District Court were §§ 80–1243—80–1248, and § 80–1304(b), Ark.Stats.Anno.1975 Supp.). The former sections prescribe a hearing procedure which can

be invoked in non-renewal situations; the latter section defines the nature of the teacher-school contractual relationship.

Nor is a decisionmaker disqualified simply because he has taken a position, even in public, on a policy issue related to the dispute, in the absence of a showing that he is not 'capable of judging a particular controversy fairly on the basis of its own circumstances.' (citations omitted).

The Board's decision not to renew appellant's contract came after an entire school term of controversy surrounding the athletic programs at Blytheville High School. It would be wholly unrealistic to expect the Board members to have no familiarity with the matters at hand. Indeed, appellant had a large following at the time in question, and the hearing itself was broadcast on local radio. The record, however, is devoid of any showing of actual bias on the part of the Board against the appellant. *See Hortonville, supra*, at 496–97, 96 S.Ct. 2308; *Norbeck v. Davenport Comm. Sch. Dist.*, 545 F.2d 63, 69 (8th Cir. 1976); *Swab v. Cedar Rapids Comm. Sch. Dist.*, 494 F.2d 353, 354–55 (8th Cir. 1974). On the contrary, the District Court opinion reflects that appellant's rights were scrupulously honored by the Board. Appellant was provided with a list of specified charges against him as well as a list of possible witnesses at the hearing. In addition, he was allowed the opportunity to inspect various school records, and to be represented by an attorney who was allowed to cross-examine witnesses. The Board went well beyond the minimum requirements of the pertinent Arkansas statutes to safeguard appellant's rights. In fact, the District Court found that even though no property or liberty interest was at issue, the Board nonetheless afforded appellant the procedural due process required by the Constitution. The record amply supports this conclusion.

Affirmed.