685 P.2d 1323

**Michael NEARY, Petitioner-Appellant,**

**v.**

**Cecilia A. FRANTZ, Ph.D., Superintendent of Wilson Elementary School District No. 7 and The Board of Trustees of Wilson Elementary School District, No. 7, Respondents-Appellees.**

**No. 1 CA–CIV 6142.**

Court of Appeals of Arizona,
Division 1, Department D.

March 6, 1984.

---

Smith & Curtis by David W. Curtis, Jr., Phoenix, for petitioner-appellant.

Wentworth & Lundin by Charles W. Herf, Phoenix, for respondents-appellees.

## OPINION

### KLEINSCHMIDT, Judge.

This is an appeal from the dismissal of a special action brought by a teacher whose employment contract was not renewed. The pertinent facts giving rise to this litigation are as follows. Michael Neary was employed as a substitute teacher in the Wilson Elementary School District during the first semester of the 1977–78 school year. He had a substitute's certificate which entitled him to teach as a non-contract teacher for not more than 90 days during a school year. *See* Ariz.Admin. Comp.R. 7–2–603(K) (1978). However, he had not completed the educational requirements for a basic elementary or secondary teaching certificate.

A teacher for whom Mr. Neary frequently substituted had medical problems which ultimately led to his inability to return to the classroom. At the request of the district superintendent, Mr. Neary was issued an emergency teaching certificate which enabled him to enter into a written contract on February 2, 1978, limiting him to teach in the Wilson District for 87 days during the second semester of the 1977–78 school year. *See* Ariz.Admin.Comp.R. 7–2–603(L) (1978). The emergency certificate was necessary to permit Mr. Neary to become a permanent substitute for the ill teacher because the number of days which he had taught during the first semester plus the second semester would have exceeded the 90 day limitation on his substitute teaching certificate and Mr. Neary had not completed the student teaching requirement for a basic certificate. He spent the last nine weeks of the school year fulfilling the student teacher requirement under the supervision of another district teacher. While he was student teaching, he did not engage in full-time teaching activities with his regular class. The record does not reflect whether the district continued to pay him as a "teacher" during these nine weeks nor does it reflect whether another teacher was hired for his regular class.

During the summer of 1978, Mr. Neary took additional college courses and received a basic secondary teaching certificate. He was then employed under contract as a full-time teacher in the Wilson District for three consecutive school years, i.e., 1978–79, 1979–80 and 1980–81.

During the 1980–81 school year, Mr. Neary was observed and evaluated several times by Mr. Joe Rodriguez, the school principal. As a result of Rodriguez's evaluations and recommendations, the Governing Board of Wilson Elementary School District approved a Notice of Inadequate Performance, which was given to Mr. Neary on January 15, 1981. The notice complied with A.R.S. § 15–538 by informing Mr. Neary that he had 90 days in which to rectify various deficiencies in his teaching performance. On April 7, 1981, Mr. Neary received a letter from Mr. Rodriguez stating that Mr. Rodriguez would not recommend that Mr. Neary be rehired. On April 15, 1981, the board approved a Notice of Non-Renewal, which advised Mr. Neary that his contract of employment would not be renewed for the 1981–82 school year.

Michael Neary filed a petition for special action in Maricopa County Superior Court on May 26, 1981, seeking to compel the board to issue him a teaching contract for the 1981–82 school year. The petition alleged that Neary had obtained continuing teacher status and that the board had failed to comply with the statutory procedures required for dismissal. The petition further alleged that the reason for Neary's dismissal was his union activities in the American Federation of Teachers. A hearing was conducted and the board moved for dismissal at the close of petitioner's evi-

dence. The motion was granted and judgment was entered on July 8, 1981. This appeal followed.

Neary argues that the trial court erred by: (1) finding that he was not a continuing teacher as defined in A.R.S. § 15–501; (2) excluding evidence of alleged infringement of constitutional rights, and (3) granting a motion to dismiss without permitting him an opportunity to present a written response.

## FAILURE TO TREAT PETITIONER AS A CONTINUING TEACHER

We consider first whether Neary was a continuing teacher and thereby entitled to the protection of Arizona's teacher tenure statutes in effect in 1981.[1] *See* A.R.S. §§ 15–531 *et seq.* The determination of whether a teacher has become tenured is based solely upon the individual falling within the definition of a "continuing teacher" set forth in A.R.S. § 15–501(A)(2) [current version at A.R.S. § 15–501(A)(3)]. *See Mish v. Tempe School District No. 3*, 125 Ariz. 258, 609 P.2d 73, (App.1980). A.R.S. § 15–501(A)(2) [current version at A.R.S. § 15–501(A)(3)] defines a continuing teacher as:

> [A] *certificated teacher* who is *employed under contract* in a school district as a *full-time classroom teacher*, a full-time classroom teacher employed under contract in an accommodation school, a school principal devoting not less than fifty per cent of his time to classroom teaching or a supervisor of school children's activities, and *whose contract has been renewed for his fourth consecutive year* of such employment in the district. [Emphasis added].

Neary contends that the time he worked during the first semester of 1977–78 as a substitute plus the time he worked during the second semester under his emergency certification should be considered "a year's employment under contract in a school district as a full-time classroom teacher." If the 1977–78 school year constitutes his first contract, then his contract for the 1980–81 school year would have been his fourth consecutive year of teaching, making him a continuing teacher. Neary argues that he was a "certificated" teacher throughout the 1977–78 school year even though he lacked a basic teaching certificate because he had a "substitute certificate" and later an "emergency certificate." He further argues that he was "employed under contract" throughout both semesters even though there was no written contract for his first semester of substitute teaching. Finally, he argues that his written contract for 87 days for the second semester plus the number of days actually taught as a substitute during the first semester constitute a "year of employment." We disagree.

■ First we consider whether Neary's substitute teaching during the first semester of 1977–78 should be counted as teaching experience for purposes of acquiring tenure. Arizona courts have not addressed this issue. We find, however, that a reasonable interpretation of A.R.S. § 15–501(A)(2) [current version at A.R.S. § 15–501(A)(3)] considered in the context of other provisions of Title 15 and the Rules and Regulations of the State Board of Education precludes substitute teaching from counting toward tenure. In reaching this conclusion we have considered that purposes of the Arizona Teacher Tenure Act are to insulate teaching professionals from arbitrary dismissals, while providing an extensive period of time for school boards to scrutinize the performance of a teacher and to weed out, before tenure vests, those who

1. In 1981, the legislature recodified Title 15 of the Arizona Revised Statutes. By Laws 1981, ch. 1, § 2, A.R.S. § 15–536 was enacted and governed the offer of contracts to probationary teachers and contract renewal for continuing teachers. Its provisions were identical to former A.R.S. § 15–252 (repealed by Laws 1981, ch. 1, § 1). In 1983, the legislature amended A.R.S. § 15–536, deleted those provisions relating to continuing teachers and added A.R.S. § 15–538.01 governing offers of contracts to continuing teachers. *See* Laws 1983, ch. 281, §§ 6 and 10. The procedural rights claimed by Mr. Neary are those set forth in A.R.S. §§ 15–536, –538, –539, –541 and –544, prior to the 1983 amendments.

are not of the desired quality. *See Mish v. Tempe School District No. 3, supra.* The latter purpose would not be advanced by the broad statutory interpretation of A.R.S. § 15–501(A)(2) [current version at A.R.S. § 15–501(A)(3) ] advocated by Neary.

■ Teaching experience counting toward tenure pursuant to A.R.S. § 15–501(A)(2) [current version at A.R.S. § 15–501(A)(3) ] must be both while "certificated" and while "employed under contract." It is undisputed that as a substitute teacher during the first semester of 1977–78 Mr. Neary did not work pursuant to a written contract. Nevertheless, he argues that he had an oral contract. However, the true meaning of the term "employed under contract" can only be derived by reading the Arizona Teacher Tenure Act as a whole. *See King v. Henderson,* 5 Ariz.App. 95, 423 P.2d 370 (1967). A.R.S. § 15–502 authorizes contracts between a teacher in a school district and expressly requires that they be in writing. In addition, A.R.S. § 15–536 (amended by Laws 1983, ch. 281, §§ 6 and 10) provides in pertinent part:

> The probationary or continuing teacher's acceptance of the contract for the ensuing year must be indicated within thirty days after receipt of the contract or contract renewal by signing and returning the contract or contract renewal or by an acceptance in writing which is delivered to the governing board or the offer of contract or contract renewal is revoked.

Further, State Board of Education rules differentiate between "substitute" and "contract" teaching. For example, Ariz. Admin.Comp.R. 7–2–603(K)(4) prohibits a substitute teacher from filling a vacancy in a "contract teaching position." We conclude that Mr. Neary was not "employed under contract" for purposes of A.R.S. § 15–501(A)(2) [current version at A.R.S. § 15–501(A)(3) ] during the first semester of 1977–78 when he worked as a substitute. Consequently, the days on which he taught during that semester cannot be counted towards the acquisition of tenure. Our conclusion is supported by substantial authority from other jurisdictions which holds that for purposes of tenure, substitute teaching is not equivalent to teaching as a regularly certificated probationary teacher. *See, e.g., Kuykendall v. Board of Education,* 111 Ill.App.3d 809, 444 N.E.2d 766, 67 Ill.Dec. 530 (1982); *Pottsville Area School Dist. v. Marteslo,* 55 Pa.Cmwlth. 481, 423 A.2d 1336 (1980); *Corrigan v. Donilon,* 433 A.2d 198 (R.I.1981).

Next we consider whether Neary's employment pursuant to a written contract under an "emergency certificate" was sufficient to constitute a year's employment for purposes of becoming a continuing teacher. He argues that a "certificated" teacher for purposes of A.R.S. § 15–501(A)(2) [current version at A.R.S. § 15–501(A)(3) ] means a person holding *any* type of teaching certificate. The board argues that this statute was not intended to include teaching either pursuant to a "substitute certificate" or an "emergency certificate" for purposes of acquiring tenure. The board argues that the controlling definition of "certificated teacher" for purposes of A.R.S. § 15–501(A)(2) [current version at A.R.S. § 15–501(A)(3) ] is contained in A.R.S. § 15–501(A)(1) [current version at A.R.S. § 15–501(A)(2) ] which provides:

> 'Certificated teacher' means a person holding a certificate from the state board of education to teach in the *schools* of this state. (emphasis added).

The board emphasizes that A.R.S. § 15–501(A)(1) [current version at A.R.S. § 15–501(A)(2) ] refers to a certificate to teach in the "schools" of the state and points out that Neary's "emergency certificate" limited him to teaching in the Wilson District because of the emergency situation which arose due to the regular teacher's disability. It contends that since Neary was not certificated to teach in *any* school in the state but had a restricted certificate, he was not "certificated" for purposes of A.R.S. § 15–501(A)(2) [current version at A.R.S. § 15–501(A)(3) ] when he held an emergency certificate.

While the board's argument is persuasive, we do not find it necessary to determine whether Neary was "certificat-

ed" for purposes of A.R.S. § 15–501(A)(1) [current version at A.R.S. § 15–501(A)(2)] because we find that no reasonable view of the evidence can support a conclusion that Neary's employment for 87 days during the second semester of 1977–78 constituted a "year of employment." A.R.S. § 15–501(B) provides:

> For the purpose set forth in subsection A, paragraph 2, the major portion of a school year shall be the equivalent of a year of employment in a school district.

This statute has not been construed by an Arizona appellate court. However, two attorney general opinions on this subject are persuasive. In Ariz.Atty.Gen.Op. 75–48, the attorney general stated, "under normally accepted dictionary definitions of the phrase 'major portion,' ... the statute contemplates at least employment 51% of the school year before credit will be given toward tenure." Similarly, Ariz.Atty. Gen.Op. No. 78–150 indicates that under A.R.S. § 15–501(B) a teacher would be entitled to status of "continuing teacher" if half of the 175 day statutory period for pupil attendance days plus one day were served. These opinions support the conclusion that more than one-half of the school year as a certificated teacher under contract is necessary to have that year counted toward tenure. We agree.

 In the instant case Neary was employed for 87 of the 175 student attendance days. During nine weeks of this time, he was not engaged in full-time classroom teaching activities but was completing his student teaching requirements. Assuming arguendo that his nine weeks of student teaching could be counted as full-time classroom teaching, it is undisputed that his contract was only for 87 days. Fifty-one percent of 175 student attendance days exceeds 87 days. Consequently, Neary's second semester employment does not count as a "year of employment" for purposes of A.R.S. § 15–501(A)(2) [current version at A.R.S. § 15–501(A)(3)].

Having found that Neary's teaching during the second semester of the 1977–78 school year did not constitute a "year of

employment", we next address the issue of whether a contract encompassing only a partial school year can be counted toward tenure. This issue is one of first impression in Arizona. However, there is authority from other jurisdictions with analogous statutory requirements for tenure.

In *Fortunato v. King Philip Regional School District Committee*, 10 Mass.App. 200, 406 N.E.2d 426 (1980), the court faced a situation similar to the instant case. The court construed a Connecticut statute which required that to acquire tenure the plaintiff had to have served in the public school for "three previous consecutive school years." The librarian claiming tenure status had an initial contract for 160 out of 182 school days for the 1975–76 school year, and his salary was prorated accordingly. He was employed full-time for the following three school years but in the spring of 1979, was given notice that his contract would not be renewed. Like Neary, Fortunato claimed that he had acquired tenure. The court disagreed and defined "school year" as the "entire school year" for purposes of determining tenure status, thus precluding inclusion of Fortunato's partial contract covering 160 days.

A similar conclusion was reached in *Brodie v. School Committee of Easton*, 3 Mass.App. 141, 324 N.E.2d 922 (1975). The court held that 136 days of full-time teaching in 1969–70 did not count towards obtaining tenure. Thus, despite employment for the following three consecutive years, the teacher involved in *Brodie* was determined not to have acquired tenure.

Neary argues that the Arizona Teacher Tenure Act does not define the term "year" and that the term "year" must be given its plain and ordinary definition of a calendar year. However, this argument fails in light of the way in which it is used throughout Title 15.

 A.R.S. § 15–801 expressly provides that the school year shall begin July 1 and end June 30. A.R.S. § 15–536 (amended by Laws 1983, ch. 281 §§ 6 and 10) requires contract renewal between March 15 and

May 15 for the school year, unless notice of nonrenewal is given by April 15 to probationary teachers. Nothing in A.R.S. § 15–536 (amended by Laws 1983, ch. 281, §§ 6 and 10) contemplates notice of intent not to renew a probationary teacher's contract any time other than April 15, which means that the statute is predicated on a full "year" of employment. This is a full *school* year. A contrary conclusion would require that there be alternative provisions for teachers who acquire tenure mid-year. It is clear that the directives of A.R.S. § 15–501 *et seq.* are based upon a school year rather than a calendar year. *See also Strejcek v. Board of Education of Berwyn School District No. 100,* 78 Ill.App.3d 400, 397 N.E.2d 448, 33 Ill.Dec. 942 (1979).

Based on the foregoing, we conclude that the trial court correctly found that Neary was not a continuing teacher and was not entitled to the statutory protection of Arizona's Teacher Tenure Act.

## FAILURE TO CONSIDER EVIDENCE OF FIRING FOR IMPERMISSIBLE REASONS

█ Neary's second major claim of error involves the exclusion of evidence offered to establish that the board's failure to treat him as a continuing teacher and its decision not to renew his contract were based upon constitutionally impermissible reasons. Specifically, he alleges that his activities as president of the local chapter of the American Federation of Teachers and his involvement in the publication of a newsletter highly critical of Mr. Rodriguez were the real reasons for his unfavorable evaluations. As he correctly points out, the absence of tenure will not defeat the right to reinstatement if the reasons for dismissal or non-renewal constitute violations of First Amendment rights. *See Mt. Healthy City School District v. Doyle,* 429 U.S. 274, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977); *Perry v. Sindermann,* 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972).

█ However, in a special action proceeding, the trial court is limited to considering: (1) whether the defendant failed to exercise discretion which it had a duty to exercise or perform a duty required by law as to which it has no discretion; (2) whether the defendant has proceeded or is threatening to proceed without or in excess of its jurisdiction or its legal authority, and (3) whether the defendant is acting in an arbitrary or capricious manner or has abused its discretion. *See* Rule 3, Rules of Procedure for Special Actions. A special action is not available if there is some other plain, speedy, and adequate remedy. Rule 1, Rules of Procedure for Special Actions. The special action proceeding replaces, among other things, the former petition for a writ of mandamus. A remedy does not become inadequate merely because more time would transpire by pursuing a conventional action. *Rhodes v. Clark,* 92 Ariz. 31, 373 P.2d 348 (1962).

█ Arizona courts have held that in a special action the trial court has no power to review the reasons given by a school board for non-renewal of the contracts of probationary teachers unless such reasons are so unreasonable, arbitrary and capricious that reasonable men could not differ about them. *See Chesley v. Jones,* 81 Ariz. 1, 299 P.2d 179 (1956); *Boyd v. Mary E. Dill School District No. 51,* 129 Ariz. 422, 631 P.2d 577 (App.1981); *Cervantez v. Morenci Public Schools,* 124 Ariz. 484, 605 P.2d 462 (App.1979). The reasons given by the board for non-renewal of Neary's contract were inadequacy of classroom performance based upon observations and evaluations made by the school principal. These are not, on their face, arbitrary and capricious. Consequently, the trial court had no jurisdiction in the special action proceeding to inquire behind those reasons.

Cases from other jurisdictions have reached the same conclusion under fact situations very similar to that presented here. In *Kolp v. Board of Trustees of Butte County Joint School District,* 102 Idaho 320, 629 P.2d 1153 (1981), a discharged teacher sought a writ of mandamus compelling his reinstatement. The board had allegedly discharged him for paddling students in violation of estab-

lished practice. He raised both procedural and substantive questions concerning the propriety of his termination. The Supreme Court of Idaho discussed the appropriate remedies in depth. It concluded that mandamus was an appropriate remedy for procedural violations but was not an appropriate vehicle for resolving substantive questions involving the board's discretion when there exists a plain, speedy, and adequate remedy in the ordinary course of law. The court noted that the teacher could have brought an action for breach of contractural or constitutional rights. *See also Jackson v. Board of Education of Trico Community Unit School District No. 176,* 63 Ill.App.3d 367, 380 N.E.2d 41, 20 Ill.Dec. 364 (1978) (mandamus will not be to test reasons for dismissal that are not clearly arbitrary on their face) and *Burns v. Board of Education of Fairfield School District No. 112,* 47 Ill.App.3d 589, 362 N.E.2d 353, 5 Ill.Dec. 882 (1977) (where reasons for dismissal were not arbitrary on their face the truthfulness of such reasons cannot be tested in a proceeding in mandamus). *Contra Nicolella v. School Board of the Trinity Area School District,* 444 Pa. 544, 281 A.2d 832 (1971).

■ The appellant had a plain, speedy, and adequate remedy at law. A cause of action is conferred by 42 U.S.C. § 1983 on anyone who has been deprived of a constitutional right under color of law. The action may be brought in law or in equity. It may be brought in the state court, *Brown v. DeLayo,* 498 F.2d 1173 (10th Cir.1974), and indeed, claims similar to appellant's have been resolved under the federal statute. *See Williams v. Day,* 412 F.Supp. 336 (E.D.Ark.1976), *affirmed* 553 F.2d 1160 (8th Cir.1977) and *Jacobs v. Stratton,* 94 N.M. 665, 615 P.2d 982 (1980). Since a petition for special action is an inappropriate vehicle for determining whether Neary's first amendment rights of association and speech were violated, the trial court did not err in excluding evidence that went to this issue.

Finally, we consider Neary's contention that the trial court abused its discretion by requiring an immediate oral response to the board's motion to dismiss made after the close of petitioner's case. Prior to the hearing, the trial court had established a schedule of written responses to the school board's motion to dismiss on the pleadings pursuant to Rule 12(b)(6), Arizona Rules of Civil Procedure. However, the motion to dismiss to which the trial court required an immediate response was not a Rule 12(b)(6) motion. Rather, this motion was governed by Rule 41(b), which provides in pertinent part:

> After the plaintiff, in an action tried by the Court without a jury, has completed the presentation of his evidence, the defendant, without waiving his right to offer evidence in the event the motion is not granted, may move for a dismissal on the grounds that upon the facts and law the plaintiff has shown no right to relief.

■ A motion to dismiss the complaint pursuant to Rule 12(b)(6), tests the sufficiency of the complaint, whereas a motion to dismiss under Rule 41(b) tests the sufficiency of petitioner's evidence to support the elements of his claim. The motions address separate and distinct aspects of the lawsuit. The filing of the board's Rule 12(b)(6) motion had no bearing upon the making or the granting of the Rule 41(b) motion after Neary had rested his case.

Neary argues that that the trial court should have followed the schedule of written responses to the Rule 12(b)(6) motion. However, the trial court is under no statutory or judicial obligation when granting a Rule 41(b) motion to consider only written responses. Counsel for Neary was offered the opportunity to respond to that motion. Nothing precluded the petitioner from being prepared at the hearing or from having researched the issues in the case before appearing in court. The fact that counsel desired more time to prepare an answer is not a basis for reversal.

Counsel had been informed at the outset that the hearing would be a hearing on the merits. No objection was made to this determination. Accordingly, counsel had to be aware that a motion to dismiss was

available if he failed to sustain his burden of proof to establish a claim upon which relief could be granted. Mr. Neary failed to establish a basic element of his case, i.e., that he was a continuing teacher entitled to the protection of Arizona's Teacher Tenure Act. The trial court therefore had the discretion to allow the board to resubmit its motion to dismiss as a Rule 41(b) motion.

The judgment of the trial court is affirmed.

GREER and JACOBSON, JJ., concur.